UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| RITACCA COSEMTIC SURGERY AND MED SPA, Ltd., an Illinois LLC, BLACK ALSATIANS, LLC d/b/a PIGMENT DEMOGRAPHICS AND LASER REMOVAL, a Texas LLC, SAXON HATCHETT, DR. THOMAS BURKE, BURKE DERMATOLOGY, P.A., DR. ISABEL BANUCHI, BANUCHI INSTITUTE, DR. STEPHEN SNYDER, DERMATOLOGY LASER CENTER & MEDISPA, THE FACIAL SURGERY CENTER, and ALL OTHERS SIMILARLY SITUATED,<br><br>      Plaintiffs,<br><br>v.<br><br>CYNOSURE, INC. a Delaware Corporation,<br><br>      Defendants. | Case no. 15-cv-50148<br><br>Judge Frederick Kapala<br><br>Magistrate Judge Iain Johnston |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS**

Now Come Plaintiffs, LDGP, LLC et al., by and through their attorneys, POWER ROGERS & SMITH, LLP, in response to Defendant's, Cynosure, Inc., Motion to Strike Plaintiffs' Class Allegations, stating as follows:

**INTRODUCTION**

Defendant contends that this Court does not have jurisdiction over the Defendant with regard to the absent class members and that there are not enough Illinois plaintiffs to satisfy Rule 23's numerosity requirement. However, this Court *does* have jurisdiction over the Defendant with respect to the absent class members because specific personal jurisdiction is met. Further, there is more than an adequate amount of Illinois plaintiffs to satisfy Rule 23's numerosity requirement

1

due to joinder being impractical. For these reasons and the reasons that follow, this Court should deny Defendant's Motion to Strike Plaintiffs' Class Allegations.

**I.    THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER CYNOSURE WITH RESPECT TO THE ABSENT CLASS MEMBERS.**

"The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives injury. One of the first duties of government is to afford that protection." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (recognizing the manifest state interest in providing a forum for redress of injuries). The U.S. Supreme Court has held that "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity," it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity. *Burger King*, 471 U.S. at 474 (1985) citing *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223 (1957). This Court has the right to hold a nonresident defendant accountable when that defendant causes injury within a forum. *Gray v. Am. Radiator & Standard Sanitary Corp.*, 22 Ill. 2d 432 (1961); *Connelly v. Uniroyal, Inc.*, 75 Ill. 2d 393 (1979); *World-Wide Volkswagen v. Woodson*, 444 U.S. 286 (1980); *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011); *Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102 (1987). The main pillar of the personal jurisdiction analysis is whether or not the defendant has certain minimum contacts with the forum state that subjecting it to the jurisdiction of the court would not upset "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 66 (1945).

There are three conditions that need to be met in order for a court to exercise specific, often called case-linked, personal jurisdiction over a nonresident defendant. First, the defendant must have "purposefully availed itself of the privilege of conducting activities within the forum State"

or have purposefully directed its conduct into the forum State. *J. McIntyre Machinery, Ltd.*, 564 U.S. at 877 (2011). Second, plaintiff's claims need to "arise out of or <u>*relate to*</u>" the Defendant's contacts with the forum. (emphasis added). *Helicopteros*, 466 U.S. at 414 (1985). Lastly, the exercise of jurisdiction must be reasonable under the circumstances. *Asahi Metal Industry Co.*, 480 U.S. at 113–114 (1987); *Burger King Corp.*, 471 U.S. at 477–478 (1985). Cynosure marketed and distributed its PicoSure product in Illinois, thereby purposefully availing itself of the privileges and benefits of the state. (Pls.' Compl. at ¶¶ 16-53). Furthermore, the out-of-state absent class members' claims "relate to" the original, resident Plaintiffs' claims because their allegations are nearly identical, the only difference being where the injury took place. Finally, it's more than fair, just, and reasonable to exercise personal jurisdiction over the Defendant with respect to the out-of-state absent class members.

    a. **CYNOSURE PURPOSEFULLY AVAILED ITSELF OF ILLINOIS AND ITS ECONOMIC BENEFITS.**

The defendant must have "purposefully availed itself of the privilege of conducting activities within the forum State" or have purposefully directed its conduct into the forum State. *J. McIntyre Machinery, Ltd.*, 564 U.S. at 877 (2011). Here, there is no dispute that Cynosure directed its marketing and distribution of PicoSure to Illinois. They sold 14 PicoSure machines in the state of Illinois and sought to benefit from Illinois' overall economic market, thus consenting to potential litigation arising from their contacts. (Def.'s Response to Production Request, Bates #1007). They do not dispute jurisdiction with respect to the resident Plaintiffs, to which one can infer that they acknowledge their purposeful availment of Illinois and its economic market.

### b. THE ABSENT CLASS MEMBERS' CLAIMS ARISE OUT OF OR RELATE TO CYNOSURE'S CONTACTS WITH ILLINOIS.

The United States Supreme Court has yet to define the exact scope of this requirement. In *Helicopteros*, the Supreme Court commented:

> [W]e decline to reach the questions (1) whether the terms "arising out of" and "related to" describe different connections between a cause of action and a defendant's contacts with a forum, and (2) what sort of tie between a cause of action and a defendant's contacts with a forum is necessary to a determination that either connection exists. Nor do we reach the question whether, if the two types of relationship differ, a forum's exercise of personal jurisdiction in a situation where the cause of action "relates to," but does not "arise out of," the defendant's contacts with the forum should be analyzed as an assertion of specific jurisdiction.

466 U.S. at 415, n. 10.

Although the United States Supreme Court has not completely clarified the constraint, several courts have found the standard to be a flexible, relaxed standard. *N. Laminate Sales, Inc. v. Davis*, 403 F. 3d 14, 25 (1st Cir. 1998). A claim "relates to" a defendant's forum conduct if it has a "connect[ion] with" that conduct. *International Shoe*, 326 U.S., at 319. The 'arising from' requirement of specific personal jurisdiction is a lenient one. *Schneider v. Hardesty*, 669 F. 3d 693, 703 (6th Cir. 2012); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir.1996) ("If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts."); *Myers v. Casino Queen, Inc.*, 689 F. 3d 904, 913 (8th Cir. 2012) (discussing the need to adopt a flexible approach when construing the 'relate to' aspect of the Supreme Court's standard, and the propriety of considering the totality of the circumstances in the jurisdictional inquiry.); *Etchieson v. Cent. Purchasing, LLC,* 232 P. 3d

4

301, 304 (Colo. Ct. App. 2010) (holding that "a cause of action 'arises out of or relates to' a defendant's activities in the forum if it was reasonably foreseeable that as a result of those activities the defendant could be sued in the forum on a cause of action similar to that brought by the plaintiff." (emphasis added)); *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1781 (2017) (An "adequate link" is necessary to show that a claim "arises out of or relates to" the suit). Specific jurisdiction is confined to adjudication of issues deriving from, <u>or connected with</u>, the very controversy that establishes jurisdiction. (emphasis added). *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). At least one Illinois Appellate Court seems to be following this trend by finding that an action arises out of or relates to a defendant's contacts with a forum state where that cause "'lie[s] in the wake of the commercial activities by which the defendant submitted to the jurisdiction' of the forum state." *Commerce Trust Co. v. Air 1st Aviation Companies, Inc.*, 366 Ill. App. 3d 135, 145 (2006).

In *Myers*, plaintiff casino customer was beaten up outside of Casino Queen in East St. Louis, Illinois and brought a negligence and premises liability action in Missouri state court, the state in which he was a resident. *Myers*, 689 F. 3d at 907 (8th Cir. 2012). After the case was removed to federal court, the defendant argued a lack of personal jurisdiction under Missouri's long arm statute. *Id*. The eighth circuit disagreed, saying the defendant casino's "advertising and promotional campaigns are numerous and extensive," supporting the notion of minimum contacts and purposeful availment *Id*. "Not only does Casino Queen advertise through print, radio, and television media in Missouri, but it also engages in direct mailing campaigns targeted at Missouri addresses." *Id*. The court based its reasoning on the fact that "specific jurisdiction is warranted when the defendant purposely directs its activities at the forum state and the litigation "result[s] from injuries ... relating to [the defendant's] activities [in the forum state.]" *Id*. at 912-913 citing

5

*Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008). Additionally, and possibly most important, they have emphasized the need to consider "the totality of the circumstances in deciding whether personal jurisdiction exists[,]" *Id.* citing *K–V Pharm. Co. v. J. Uriach & CIA, S.A.,* 648 F.3d 588, 592–93 (8th Cir. 2011). Overall, under those circumstances, the court found "the exercise of specific jurisdiction over Casino Queen is consistent with traditional notions of fair play and substantial justice." *Id*.

In *Etchieson*, plaintiff sought compensation for injuries he incurred when an electric meter manufactured by Precision exploded. 232 P. 3d at 304. While Precision did not sell the type of meter that injured the plaintiff directly to anyone in Colorado, the company did, however, sell a different model of electric meter to the Rozek Company. *Id.* In finding that Precision was subject to personal jurisdiction in Colorado, the court concluded that Precision established minimum contacts through its Rozek-based contacts. *Id.* at 308. The court reasoned that a cause of action "arises out of or relates to" a defendant's activities in the forum if it was reasonably foreseeable that as a result of those activities the defendant could be sued in the forum on a cause of action *similar* to that brought by the plaintiff. *Id.* Accordingly, the court found that Precision's contacts through selling electric meters to Rozek made it reasonably foreseeable that Precision could be sued in Colorado for selling defective electric meters, which was the basis of the plaintiff's suit. *Id.*

In the present case, Cynosure directed their marketing and distribution of their PicoSure product at Illinois. The original, resident Plaintiffs make the exact same allegations as the out-of-state absent class members. Despite their injuries not occurring in Illinois, the absent class members' claims and allegations are identical to the resident class members. Therefore, the absent

6

class members' claims "relate to" and are "connected with" the resident members' claims for purposes of finding specific personal jurisdiction.

### c. **IT IS FAIR AND REASONABLE TO ASSERT PERSONAL JURISDICTION OVER CYNOSURE WITH RESPECT TO THE ABSENT CLASS MEMBERS.**

The 14th Amendment's Due Process Clause requires fairness and reasonableness in the exercise of government power and therefore, a state courts assertion of personal jurisdiction. Because "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity," it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity. *Burger King*, 471 U.S. at 474 (1985) citing *McGee,* 355 U.S. at 223 (1957). The personal jurisdiction analysis centers on whether or not the defendant has certain minimum contacts with the forum state that subjecting it to the jurisdiction of the court would not offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. 310, 66 (1945). A court may exercise specific personal jurisdiction over a defendant if the defendant purposefully established minimum contacts within the forum state and those contacts make personal jurisdiction reasonable and fair under the circumstances. *Burger King*, 471 U.S. at 476-77. "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). Accordingly, Illinois has a policy to keep its courts open to residents and nonresidents alike. *James v. Grand Truck Western Railroad*, 14 Ill. 2d 356, 362 (1958).

Once a plaintiff has established that the defendant purposely directed his activities at the forum state, i.e. has sufficient minimum contacts with the forum state, the defendant must present a compelling case that litigating the dispute there would be unreasonable. *World-Wide Volkswagen*, 444 U.S. at 292 (1980). Five factors guide the inquiry into whether it is reasonable

7

to require a nonresident defendant to litigate in the forum state: (1) the burden on the defendant to defend the action in the forum state; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the action; (5) the shared interests of the several states in advancing fundamental social policies. *Id.*

Here, all five factors favor personal jurisdiction over the Defendant with respect to the out-of-state absent class members. There is little to no burden on the Defendant to defend in Illinois. The other, non-contested resident class members already brought suit in Illinois. If anything, it would be more burdensome on the Defendant to defend against the out-of-state absent class members in multiple other states. The second factor is satisfied because Illinois has an interest in providing relief to "residents and nonresidents alike." *James*, 14 Ill. 2d at 362 (1958). The third factor is self-evident; all of the Plaintiffs are seeking relief from the injuries they sustained from the Defendant's deceit. Having all of the Plaintiffs, residents and nonresidents of the forum state, consolidated into one action has its clear benefits, including the sharing of discovery and minimizing costs. Finally, the fourth and fifth factors are satisfied due to the efficiency of having all Plaintiffs in one jurisdiction and venue and furthering the fundamental policy of truthful advertising.

Furthermore, common sense shows that the out-of-state absent class members claims are identical to the in-state class members' claims. They all allege that they "saw, heard, read and relied upon" certain misrepresentations by the Defendant and "administered the treatment as Cynosure recommended." (Pls.' Compl. at ¶¶ 54, 70, 86, 102, 116, 130, 144, and 158). Aside from the absent class members being from out-of-state, there is no difference between the claims of the nonresident class members and the resident Plaintiffs. Accordingly, it is within the bounds of the

8

Due Process Clause to assert personal jurisdiction over the Defendant with respect to the out-of-state absent class members.

Lastly, the present case can be distinguished from *Bristol-Myers Squibb* on the basis of fairness and reasonableness. In *Bristol-Myers Squibb*, the group of over 600 plaintiffs consisted of only 86 residents and *592 nonresidents*. 137 S. Ct. at 1778. The Supreme Court clearly noted the burden on the defendant in having to defend against 592 nonresident plaintiffs in one state. Here, there are only six, nonresident Plaintiffs. *Id*. at 1780-1781. The burden on Cynosure is much less compared to the defendant in *Bristol-Myers Squibb*. Therefore, allowing the newly-added Plaintiffs to bring suit against the Defendant would not upset "traditional notions of fair play and substantial justice" and would ultimately be fair, just, and reasonable.

## II. EVEN IF THIS COURT FINDS NO PERSONAL JURISDICTION OVER THE OUT-OF-STATE, ABSENT CLASS MEMBERS, CLASS CERTIFICATION SHOULD STILL STAND BECAUSE RULE 23'S NUMEROSITY REQUIREMENT IS SATISFIED BY THE ILLINOIS MEMBERS.

Should this Court find there is no jurisdiction over the Defendant with regard to the out-of-state, absent class members, there are more than enough Illinois class members to fulfill Rule 23(a)'s numerosity requirement and obtain Illinois class certification. Defendant erroneously argues that "there were only 19 purchasers of the device [PicoSure]" as of January 30, 2018. They point to an attached exhibit of theirs to prove this point. However, that exhibit shows 21 Illinois purchasers, an amount that satisfies Rule 23(a)'s numerosity requirement. "At the lower-end, 'a class that encompasses fewer than 20 members will likely not be certified absent other indications of impracticability of joinder.'" *Coleman through Bunn v. District of Columbia*, 306 F.R.D. 68, 76 (D.C. Dist. 2015) citing Newberg on Class Actions § 3:11 (5th ed. 2014). "There is no magic number needed to satisfy Rule 23(a)(1)'s numerosity requirement." *Heritage Operations Group, LLC v. Norwood*, 322 F.R.D. 321, 325 (N.D. Illinois) (2017). The court is not limited to

considering merely the number of potential class members, but may make common-sense assumptions that support a finding of numerosity. *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill) (1996). "A relatively small group may form a class if other considerations make joinder impracticable." *Id*. quoting *Patrykus v. Gomilla*, 121 F.R.D. 357, 360–61 (N.D.Ill.1988). For example, the court may consider factors such as judicial economy and the ability of members to bring individual lawsuits. *Id*. In addition, the court must look at the individual circumstances of a case in determining whether joinder is impracticable. *Id*. Joinder is impractical based on certain factors, such as judicial economy and the geographic dispersion of the class members.

In *Gaspar*, plaintiff was working for Linvatec Corp. in Chicago, IL, a subsidiary of Bristol-Myers Squib. *Id*. at 54. As a result of corporate downsizing, the Linvatec plant in Chicago and other plants elsewhere were forced to shut down, laying off plaintiff and other employees. *Id*. Defendants gave plaintiff and the other laid off employees an option: a voluntary early retirement plan or a severance plan. *Id*. Defendants told employees they could choose only one. *Id*. All did except for plaintiff, who chose both, claiming "the plan documents contained no such limitation." *Id*. at 55. Defendants then denied plaintiff either plan. *Id*. In his class action complaint on behalf of all employees who were laid off, plaintiff said Defendants violated the Employee Retirement Income Security Act by refusing to provide retirement income. *Id*.

On a motion to certify class, plaintiff claimed that the 18 employees were numerous enough to satisfy a class action complaint. *Id*. Defendants said that number is too small, saying it needed to be around 40. *Id*. However, the court disagreed, saying "the mere number of members in Gaspar's proposed class—18—is not so small as to preclude the numerosity requirement from being met." *Id*. at 56. citing *Patrykus*, 121 F.R.D. at 361 (citing *Rosario v. Cook County*, 101 F.R.D. 659, 661 (N.D.Ill.1983) (class of 20 held sufficient); *Dale Electronics v. R.C.L. Electronics,*

*Inc.*, 53 F.R.D. 531, 534 (D.N.H.1971) (class of 13 held sufficient)). They next held that judicial economy would be served by certifying this class because "the damages flow from the resolution of a single question . . ." *Id*. Further, the proposed class members were geographically dispersed, making joinder extremely difficult. *Id*. For these reasons, the court certified this class action of 18 members.

In the present case, the impracticability of joinder is obvious in that having 21 Plaintiffs in Court would present an inefficient, inconvenient, and burdensome way of handling this case. The class members are geographically dispersed throughout Illinois, with some in Chicago, Rockford, and Champaign. Furthermore, the judicial economy in having all these plaintiffs be in the same class would save this Court time and resources. While Defendant argues these class members are all able to bring a suit on their own, the reality is that it is still extremely expensive and time consuming to bring a lawsuit, despite the class members being, as Defendant says, "businesses such as dermatology practices, tattoo clinics," etc. Lastly, and perhaps most important, is the fact that 21 class members are enough to satisfy the numerosity requirement. The presumptive floor for Rule 23(a) to be met is 20. And as the *Gaspar* court noted, there typically is no strict, hardline numerosity requirement. That determination is made on a case by case basis while analyzing the individual circumstances, and under these circumstances (geographic dispersion and judicial economy), class certification should be upheld because of the impracticability of joinder. For these reasons, this Court should deny Defendant's motion.

CONCLUSION

WHEREFORE, Plaintiffs', Black Alsatians, LLC; Dr. Thomas Burke and Burke Dermatology, P.A.; Dr. Isabel Banuchi and the Banuchi Institute; Synergy Medical Specialists, P.C.; Dr. Stephen Snyder and Dermatology Laser Center & MediSpa; and The Facial Surgery Center, respectfully request that this Court deny Defendant's Motion to Strike Plaintiffs' Class Allegations.

Respectfully Submitted,

s/Devon C. Bruce

Devon Bruce

Devon C. Bruce
Jonathan M. Thomas
Power Rogers & Smith, P.C.
70 West Madison Street, 55th Floor
Chicago, IL 60602
(312) 236-9381
dbruce@prslaw.com

Marc Gravino
John Holevas
Joel Huotari
WilliamsMcCarthy, LLP
120 West State Street, 4th Floor
P.O. Box 219
Rockford, IL 61105-0219
(815) 987-8900

Mgravino@wilmac.com

jholevas@wilmac.com

jhuotari@wilma.com